IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **RUSSELL COLLIAU, Individually and On Behalf of All Others Similarly Situated,** | § § § § | **FLSA Collective Action** |
| **Plaintiff** | § § | |
| | § | **Civil Action No. 1:22-cv-000197** |
| **v.** | § § | |
| **KELLER WILLIAMS REALTY, INC.** | § § § | |
| **Defendant** | § | **Jury Demanded** |

**PLAINTIFFS' ORIGINAL COMPLAINT**

Named Plaintiff Russell Colliau ("Named Plaintiff") on behalf of himself and all others similarly situated (Named Plaintiff and potential Opt-In Plaintiffs are collectively referred to as "Plaintiffs") brings this suit against the above-named Defendant under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, as amended. Plaintiffs show as follows:

**I. NATURE OF SUIT**

1.     The FLSA was passed by Congress in 1938 to eliminate low wages and long hours and to correct conditions that were detrimental to the health and well-being of workers. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). With the requirement of overtime pay after 40 hours per week, Congress intended both to compensate employees "for the wear and tear of extra work and to spread employment through inducing employers to shorten hours . . . ." *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 460 (1948).

2.     Plaintiffs are individuals who worked for Defendant Keller Williams Realty, Inc. ("Keller Williams") as MAPS Coaches, conducting coaching sessions and classes for Keller Williams real estate agents and franchisee staff under Keller Williams' close direction and supervision. Keller

Williams has violated the FLSA by refusing to pay Plaintiffs the overtime pay required by the FLSA. It has done so by knowingly misclassifying its MAPS Coaches as independent contractors, even though they meet the definition of "employees" covered by the Act.

3. Because there are other putative plaintiffs who are similarly situated to Named Plaintiff Colliau with regard to the work performed and Keller Williams' compensation policies, Named Plaintiff Colliau brings this action as an opt-in collective action under 29 U.S.C. § 216(b).

## II. PARTIES

4. Named Plaintiff Russell Colliau is an individual who resides in Alabama. He has consented to be a party-plaintiff in this action. His consent form is attached as Exhibit A.

5. Defendant Keller Williams Realty, Inc. is a Texas for-profit corporation that is authorized to do business in Texas and that is doing business in Texas. Defendant maintains its principal office in Austin, Texas, and can be served with process by service on its registered agent, Valerie Vogler-Stipe at 1221 South Mopac Expressway, Suite 400, Austin, Texas 78746.

## III. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction in this matter because Plaintiffs assert claims arising under federal law—specifically, the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq*. This Court, therefore, has jurisdiction pursuant to 28 U.S.C. § 1331. This Court also has personal jurisdiction over all parties to this action.

7. Venue is proper in the Austin Division of the United States District Court for the Western District of Texas. A substantial part of the events forming the basis of this suit occurred in Travis County, Texas, which is in this District and Division. Named Plaintiff Colliau performed worked for Keller Williams in Travis County, Texas. Keller Williams has its principal office in Travis County, Texas and thus resides in this district and division. 28 U.S.C. §1391(c). Venue in this

Court is therefore proper under 28 U.S.C. § 1391(b).

## IV. COVERAGE UNDER THE FLSA

8. At all relevant times, Keller Williams has been an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

9. At all relevant times, Plaintiffs were "employees" (as defined in Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1)) whom Keller Williams at all relevant times "employ[ed]" within the meaning of Section 3(g) of the FLSA, 29 U.S.C. § 203(g).

10. At all relevant times, Keller Williams has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

11. At all relevant times, Keller Williams has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and has had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

12. At all relevant times, Plaintiffs were engaged in commerce or in the production of goods for commerce, or were employed in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §207.

13. In the performance of their work, Plaintiffs routinely called Keller Williams real estate agents in other states and traveled to meet real estate agents in other states for the purpose of selling and providing coaching services.

14. In the performance of their work, Plaintiffs handle equipment and materials that were manufactured outside of the states in which they worked, including, for example, computers, telephones, and office equipment.

## V. FACTUAL ALLEGATIONS

15. According to its website, "Keller Williams is the number one real estate franchise by agent count, closed units, and closed sales volume in the United States."[1]

16. Keller Williams operates a division called MAPS Coaching, which offers coaching programs on a variety of real estate, business, and self-improvement topics in formats including one-on-one sessions, group calls, digital and in-person classes, and webinars.[2]

17. MAPS stands for Mega Achievement Productivity Systems, and Keller Williams considers MAPS its road map to success for its agents.[3]

18. MAPS Coaching clients include Keller Williams real estate agents, other Keller Williams MAPS Coaches, and leadership staff of Keller Williams' franchisees, known as "market centers."[4]

19. Keller Williams charges its MAPS Coaching clients to participate in its coaching programs.

20. Keller Williams' MAPS Coaching programs are central to Keller Williams' overall business.

21. Keller Williams boasts that it is "often described as a training and coaching company cleverly disguised as a real estate franchise."[5]

22. The job description and job duties of all of Keller Williams MAPS Coaches are essentially the same, except for the differences in content and format of the specific coaching programs that Keller Williams offers.

23. The MAPS Coaches' primary job duties are conducting coaching sessions or classes; contacting Keller Williams agents and other potential clients to solicit them for coaching programs;

---

[1] https://go.kw.com/join-keller-williams?utm_source=KW_Headquarters&utm_medium=referral&utm_content=Careers (last visited March 1, 2022).
[2] *See* https://mapscoaching.com/coaching-programs/ (last visited March 1, 2022).
[3] https://www.youdrivethesuccess.com/kw/real-estate-coaching/ (last visited March 1, 2022).
[4] *See Id.*
[5] https://careers.kw.com/ (last visited March 1, 2022).

attending Keller Williams conferences and events to solicit Keller Williams real estate agents and other potential clients for coaching programs; traveling to conduct coaching classes or attend required Keller Williams conferences and events; participating in mandatory conference calls for instruction and feedback from Keller Williams' MAPS Division staff; and receiving mandatory coaching from other Keller Williams MAPS Coaches.

24. Named Plaintiff Colliau worked for Keller Williams as a MAPS Coach from approximately October 2016 to approximately August 31, 2021.

25. During the time period relevant to this lawsuit, Named Plaintiff Colliau worked specifically in Keller Williams' BOLD Coaching program, which is one of the coaching programs administered by Keller Williams' MAPS Coaching Division.

26. The BOLD Coaching program is a multi-week, group coaching program that is currently offered in classroom and digital formats.

27. MAPS Coaches' work hours varied from week to week depending on what tasks Keller Williams assigned them to perform.

28. Keller Williams did not record or instruct its MAPS Coaches or anyone else to record the dates or hours they worked.

29. Named Plaintiff Colliau worked well over forty hours in most workweeks during the relevant period.

30. More specifically, Named Plaintiff Colliau typically worked between about 50 and 80 hours per workweek during the period of time covered by this lawsuit.

31. Other MAPS Coaches similarly worked more than forty hours per week.

32. However, Keller Williams never paid Plaintiffs overtime pay when they worked over forty hours per workweek.

33. Instead, Keller Williams pays MAPS Coaches, and paid Named Plaintiff Colliau, a

percentage of the fees paid by MAPS Coaching clients with no overtime pay.

34.     The Plaintiffs, including Named Plaintiff Colliau, were not guaranteed any minimum compensation on a weekly or less frequent basis, and in fact they received no compensation for workweeks in which they worked soliciting potential clients but not conducting any coaching sessions or classes.

35.     Additionally, Plaintiffs were required to pay out-of-pocket for various expenses that were required in order to perform their work or mandated by Keller Williams, including travel and lodging, office supplies, software, fees to receive coaching from other MAPS Coaches as required by Keller Williams, and registration fees to attend events required by Keller Williams. These expenses are considered deductions that further reduce Plaintiffs' effective compensation below the amount required by the overtime provision of the FLSA in overtime weeks.

36.     Keller Williams denied Plaintiffs overtime pay and reimbursement of their work expenses under its policy to classify them as independent contractors.

37.     However, the Plaintiffs were employees, as defined by the FLSA, because they economically depended upon Keller Williams such that, as a matter of economic reality, they were not in business for themselves.

38.     For example, Keller Williams exercised a high degree of control over the Plaintiffs' work. Keller Williams' MAPS Division comprises a staff of employees who supervise every meaningful aspect of the MAPS Coaches' work, including: designing the format and writing the content of the courses that Coaches teach, down to exact scripts that Coaches are required to follow; reprimanding Coaches if they deviate from the scripts; scheduling the courses that Coaches teach; requiring Coaches to attend weekly meetings with Keller Williams staff who supervise their work and provide detailed instructions; requiring Coaches to attend various other Keller Williams events and assigning tasks to each Coach to help run the events; and requiring Coaches to use particular

materials and equipment.

39. Although Keller Williams requires its MAPS Coaches to pay for certain work expenses, Keller Williams' investment in its MAPS Coaching Division is many times greater than any individual Coach's expenses.

40. The Plaintiffs are not able to control their costs in any meaningful way that determines their opportunity for profit or loss. The principal determinants of the Plaintiffs' compensation are controlled exclusively by Keller Williams, including their compensation structure, the territories that Keller Williams assigns them, the tasks Keller Williams requires them to perform, and the expenses Keller Williams requires them to pay.

41. Keller Williams also prohibits MAPS Coaches from working for competitors.

42. The Plaintiffs work more than 40 hours per week, effectively preventing them from engaging in any outside work that is not already prohibited by their noncompete agreements.

43. MAPS Coaches use certain general skills, such as business sense, salesmanship, personality, and efficiency, in order to effectively train and motivate real estate agents. However, they do not exercise any meaningful initiative within the business, but instead follow detailed instructions, recite from scripts, and teach courses from curricula established by Keller Williams' MAPS Division staff.

44. Nor do MAPS Coaches depend on their ability to find consistent work by moving from job to job and company to company, but instead they work exclusively for Keller Williams for extended periods.

45. Keller Williams has knowingly, willfully, or with reckless disregard carried out, and continues to carry out, its illegal policy of refusing to pay overtime compensation to Plaintiffs.

### VI. CAUSE OF ACTION: FLSA

46. During the relevant period, Keller Williams violated Section 7 of the FLSA, 29 U.S.C. §§

207 and 215(a)(2), by employing the Plaintiffs, in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, for workweeks longer than 40 hours without compensating such employees for all of their work in excess of forty hours per week at rates no less than one-and-one-half times their regular rates for which they were employed. Defendant has acted willfully in refusing to pay Plaintiffs in accordance with the FLSA.

## VII. FLSA COLLECTIVE ACTION ALLEGATIONS

47.     Under 29 U.S.C. § 216(b), Named Plaintiff Colliau seeks authorization to send notice of the right to join this lawsuit to a group of similarly situated employees delineated as follows:

> **All individuals who have worked as MAPS Coaches more than forty hours in any workweek at any time during the three years preceding the issuance of notice of their right to join this lawsuit.**

48.     Named Plaintiff and the Potential Opt-In Plaintiffs performed the same or similar job duties as one another.

49.     Further, Named Plaintiff and the Potential Opt-In Plaintiffs were denied overtime pay based on the same policy of Keller Williams to classify them as independent contractors. Application of that policy does not depend on the personal circumstances of the Named Plaintiff or the Potential Opt-In Plaintiffs. Thus, the Potential Opt-In Plaintiffs are owed unpaid overtime for the same reasons as Named Plaintiff, without regard to their individualized circumstances.

## VIII. JURY DEMAND

Plaintiffs demand a trial by jury.

## IX. PRAYER FOR RELIEF

Named Plaintiff Colliau prays for judgment against Defendant as follows:

a.      For an expedited Order authorizing notice to Potential Opt-In Plaintiffs under the FLSA, 29 U.S.C. § 216(b);

b.      For an Order under Section 16(b) of the FLSA, 29 U.S.C. §216(b), finding Defendant liable for unpaid back wages due to Named Plaintiff and the Potential Opt-In Plaintiffs and for liquidated damages equal in amount to the unpaid compensation found due to Named Plaintiff and the Potential Opt-In Plaintiffs;

c.      For an Order awarding Named Plaintiff and the Potential Opt-In Plaintiffs the taxable costs and allowable expenses of this action;

d.      For an Order awarding Named Plaintiff and the Potential Opt-In Plaintiffs attorneys' fees; and

e.      For an Order awarding Named Plaintiff and the Potential Opt-In Plaintiffs post-judgment interest at the highest rate allowed by law;

f.      For an Order awarding Plaintiffs declaratory and injunctive relief as necessary to prevent the Defendant's further violations and to effectuate the purposes of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.*; and

g.      For an Order granting such other and further relief, at law or in equity, as may be necessary and/or appropriate.

Respectfully submitted,

**FAIR LABOR LAW**

By:  */s/ Aaron Johnson*
Aaron Johnson
State Bar No. 24056961
ajohnson@fairlaborlaw.com
314 E. Highland Mall Blvd, Ste. 401
Austin, Texas 78752
Ph: (512) 277-3505
Ph: (512) 277-3254

**ATTORNEY FOR PLAINTIFF**